# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TERRY HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | 5:15-cv-01112-VEH-JEO |
| CHRISTOPHER GORDY, Warden of | ) | |
| Limestone Correctional Facility, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

While imprisoned at the Limestone Correctional Facility in Harvest,

Alabama, Petitioner Terry Harris, then acting *pro se*, filed this action seeking a

federal writ of habeas corpus.  (Doc.[1] 1).  He challenges his convictions on eight

counts of violating various provisions of the Alabama Securities Act ("ASA"),

Ala. Code § 8-6-1 et seq. (1975), entered following a jury trial in the Circuit Court

of Jefferson County, Alabama, in 2011.  On June 16, 2017, the magistrate judge to

whom the case was referred entered a report pursuant to 28 U.S.C. § 636(b)

recommending that the court deny the petition on the ground that Harris's claims

---

[1]References to "Doc(s). __" are to the document numbers of the pleadings, motions, and
other materials in the court file, as compiled and designated on the docket sheet by the Clerk of
the Court.  Unless otherwise noted, pinpoint citations are to the page of the electronically filed
document in the court's CM/ECF system, which may not correspond to pagination on the
original "hard copy" of the document presented for filing.

are without merit.  (Doc. 20 ("R&R")).  On July 31, 2017, Harris, now acting

through retained counsel, filed a 50-page objection to the magistrate judge's 12-

page R&R.  (Doc. 25 ("Objections" or "Obj.")).  Upon consideration, the court

concludes that Harris's objections are due to be overruled and that the magistrate

judge's findings and recommendation are due to be adopted.

## I.

### A.

In May 2007, a Jefferson County, Alabama, grand jury returned a 12-count

indictment against Harris, charging that he acted "contrary to law" in violating

various enumerated provisions of the ASA.  (Doc. 3, ¶ 7(a); *id.* at 15-18).

Following a jury trial in the Jefferson County Circuit Court, Birmingham Division,

Harris was convicted on eight of the counts, as follows:  one count charging sale

of unregistered securities in violation of Ala. Code § 8-6-4, one count charging

failure to register as an investment advisor in violation of Ala. Code § 8-6-3(b),

and six counts charging securities fraud in violation of Ala. Code § 8-6-17.  (Doc.

3, ¶ 7(f); *id.* at 15-19).  In March 2011, the trial court sentenced Harris to ten

years' imprisonment on the count charging sale of unregistered securities, five

years on the count charging failure to register, and ten years on each of his six

securities fraud convictions.  (Doc. 3, ¶ 7(g); *id.* at 20-36).  The court ordered that

the 10-year sentences on the securities fraud counts run concurrently with each other, but that the 10-year sentence for sale of unregistered securities and the 5-year sentence for failing to register would run consecutively, both to each other and to the securities-fraud sentences. (*Id.*) Accordingly, the court sentenced Harris to a total term of 25 years imprisonment.

Harris filed a notice of appeal, but the Alabama Court of Criminal Appeals dismissed his appeal on July 10, 2012, because Harris failed to file a brief. (Doc. 7-5). Harris sought no further direct review. Harris thereafter sought post-conviction relief by way of a host of state-law habeas corpus petitions filed in various state courts, including the Circuit Court of Limestone County where he was imprisoned, the Circuit Court of Jefferson County where he was sentenced, and in both the Alabama Court of Criminal Appeals and the Alabama Supreme Court. All of those efforts were unsuccessful.

## B.

Harris filed this *pro se* habeas corpus action on or about June 30, 2015, purporting to rely exclusively upon the general federal habeas statute, 28 U.S.C. § 2241. (Doc. 1). In his now-governing amended petition, Harris raises seven enumerated "Grounds for Relief." First, he insists that the state trial court acted "without jurisdiction" in his criminal case, because his indictment "charged non-

criminal offenses," insofar as the counts failed to allege specifically as a necessary *mens rea* element that his violations of state securities laws were committed "willfully." (Doc. 3, ¶ 7). Second, Harris attacks his charging document, again contending that the state trial court acted "without jurisdiction," this time because the indictment allegedly was not endorsed "A True Bill" by the foreperson of the grand jury. (*Id.*, ¶ 8). Harris's third, fourth, and fifth claims, in turn, posit that the alleged "jurisdictional" defects in his indictment outlined in his first and second grounds mean that his criminal judgment is "void" and that his convictions and imprisonment therefore violate the Due Process Clause of the Fourteenth Amendment (*id.*, ¶ 9), the Cruel and Unusual Punishments Clause of the Eighth Amendment (*id.*, ¶ 10), and the Equal Protection Clause of the Fourteenth Amendment (*id.*, ¶ 11). Finally, in his sixth and seventh claims, Harris argues that he is entitled to federal habeas relief because the Alabama Supreme Court violated his rights under the Due Process Clause and other unspecified federal constitutional provisions based upon that Court's summary denial of his state habeas corpus petition in December 2013. (Doc. 3, ¶¶ 12, 13).

In response, the magistrate judge entered an order pursuant to *Castro v. United States*, 540 U.S. 375 (2003), advising Harris that, although he appeared to rely exclusively upon § 2241 as authorizing his habeas petition, the court intended

to treat his application as also being governed by 28 U.S.C. § 2254, on the basis that he is "a person in custody pursuant to the judgment of a State court" for purposes of 28 U.S.C. § 2254(a).  (Doc. 4).  The magistrate judge then proceeded to enter an order requiring to the State to show cause why Harris is not entitled to habeas relief.  (Doc. 6).

The State answered, asserting that Harris is not entitled to relief because: (1) his petition was untimely under 28 U.S.C. § 2244(d), the one-year statute of limitations applicable to habeas petitions filed by state prisoners under § 2254; (2) his claims were procedurally defaulted because they were not properly raised and exhausted in the State courts; and (3) his "convictions and sentences were validly and constitutionally obtained."  (Doc. 7, ¶¶ 5-7).  After Harris filed a reply (Doc. 9), the magistrate judge entered a report recommending that the court accept the State's argument that Harris's petition is time-barred.  (Doc. 10).  Harris objected and provided additional documentation regarding his prior attempts to obtain post-conviction relief in the state courts.  (Doc. 13).  That prompted the magistrate judge to withdraw his report and recommendation to consider further whether Harris might be entitled to a period of tolling of the limitations period under 28 U.S.C. § 2244(d)(2) that would render his application timely.  (Doc. 14).

On June 16, 2017, the magistrate judge entered his second, now-pending

report and recommendation.  First, he concluded that, although it appeared that

Harris had been released from prison since first filing the action, his claims were

not moot, so the court retained jurisdiction.  From there, the magistrate judge

recommended that the court bypass the State's defenses based on the statute of

limitations, exhaustion, and procedural default.  Instead, the magistrate judge

found it to be more expedient simply to deny Harris's claims on the merits.  In so

doing, the magistrate judge analyzed those claims as follows:

> Harris's first five "Grounds for Relief" are all founded on a
> theory that alleged defects in his indictment deprived the state trial
> court of subject-matter jurisdiction, *i.e.*, the lawful power and
> authority, to try, convict, and sentence him for violations of Alabama
> criminal law.  As a result, Harris says, the state court judgment
> purporting to authorize his custody is "void," thereby engendering
> violations of his federal constitutional rights to due process and equal
> protection, as well as the prohibition against cruel and unusual
> punishments.  It might be assumed, *purely* for the sake of argument,
> that Harris is correct that his indictment was defective because it did
> not allege a necessary *mens rea* element of the charged criminal
> offenses under Alabama law and because it was not indorsed [sic] as
> a "true bill" and signed by the grand jury foreperson.  Even so,
> Harris's premise that such defects deprived the trial court of
> *jurisdiction* is simply wrong, as a matter of both Alabama state law
> and federal law.  *See Ex parte Seymour*, 946 So. 2d 536, 537-39 (Ala.
> 2006) (an indictment's failure to allege a necessary element of *mens
> rea* is a non-jurisdictional defect under state law); *United States v.
> Brown*, 752 F.3d 1344, 1351 (11th Cir. 2014) (same, under federal
> law); *In re Goulden*, 299 So. 2d 325, 326 (Ala. 1974) (failure of
> grand jury foreman to endorse indictment as true bill did not deprive
> circuit court of jurisdiction so as to render judgment void); *Frisbie v.
> United States*, 157 U.S. 160, 163-65 (1895) (an objection that the

indictment lacks the indorsement [sic] "A true bill" as well as the signature of the foreman of the grand jury is non-jurisdictional and may thus be waived).

Moreover, federal habeas relief is not available based upon an error of state law unless such error also gives rise to a violation of federal law. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). And on that score, the alleged indictment defects of which Harris complains could only amount, at most, to errors of Alabama law and do not implicate the United States Constitution. For starters, because the Fifth Amendment's guarantee of indictment by grand jury does not apply to the States, *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972), the sufficiency of a state indictment is [an] primarily a matter of state law. *Tapia v. Tansy*, 926 F.2d 1554, 1560 (10th Cir. 1991); *Franklin v. White*, 803 F.2d 416, 418 (8th Cir. 1986). Thus, in this circuit, "the sufficiency of a state indictment is issue on federal habeas corpus only if the indictment is so deficient that the convicting court was deprived of jurisdiction." *Heath v. Jones*, 863 F.[2]d 815, 821 (11th Cir. 1989); *see also Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986) ("An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."). And, for reasons explained previously, none of the purported defects in Harris's indictment deprived the state court of jurisdiction. Harris's first five grounds for relief are all due to be rejected.

(R&R at 8-10).

The magistrate judge also found that Harris's sixth and seventh claims also fail because they are founded upon alleged violations of Harris's constitutional rights arising from the Alabama Supreme Court's denial of his state habeas corpus petition, filed after he was sentenced. The magistrate judge reasoned that such claims could afford no basis for federal habeas relief because they attacked only

the state collateral proceedings, not Harris's underlying criminal judgment itself. (*See* R&R at 10, citing *Alston v. Department of Cor., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010); *Carroll v. Secretary DOC, Fla. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir. 2009); *Anderson v. Secretary for DOC*, 462 F.3d 1319, 1330 (11th Cir. 2006); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)).

## II.

Harris, now acting through retained counsel, has filed a 50-page objection to the magistrate judge's R&R. He separates those objections into ten sections, which he identifies as follows:

A.    Harris's verified § 2241 petition is not subject to the additional restrictions of 28 U.S.C. § 2254;

B.    The magistrate [judge] misconstrues Harris's claim of void judgment orders;

C.    The magistrate [judge] erroneously scrutinizes Harris's pro se verified § 2241 petition with technical nicety;

D.    The magistrate [judge] overlooks the fact that the Respondent has conceded the merits of Harris's claims;

E.    The magistrate [judge's] recommendation places the court in an adversarial posture;

F.    The magistrate [judge's] findings are contrary to applicable law;

G.    The magistrate [judge] impermissibly ignores the fact that Harris's allegations must be taken as true;

H. The magistrate [judge] ruled that his petition will be treated as filed under 28 U.S.C. § 2241 but the report and recommendation was based on Harris's petition being treated as filed under 28 U.S.C. § 2254;

I. The magistrate [judge] ignores the fact that the judgment orders are also void because the state court acted in a manner inconsistent with due process; and

J. Harris's claims constitute[ ] a violation of clearly established federal law.

(Obj. at 16).

## A.

Sections A and H of Harris's objections are both founded on arguments that the magistrate judge improperly treated his federal habeas petition, nominally filed pursuant to 28 U.S.C. § 2241, as being also subject to 28 U.S.C. § 2254. (*See* Obj. §§ A, H). In that vein, the Eleventh Circuit has explained that "the writ of habeas corpus is a single post-conviction remedy principally governed by two different statutes," 28 U.S.C. § 2241 and 28 U.S.C. § 2254. *Medberry v. Crosby*, 351 F.3d 1049, 1059 (11th Cir. 2003). While § 2241 applies to a person in custody in five situations enumerated in 28 U.S.C. § 2241(c), § 2254 applies only to a particular subset of those, namely to "a person in custody *pursuant to the judgment of a State court*" who claims to be "in custody in violation of the Constitution or laws or

treaties of the United States." *Id.* (quoting § 2254(a) (emphasis in *Medberry*)).

And, where § 2254 governs a habeas petition, that carries certain "attendant restrictions," *Thomas v. Crosby*, 371 F.3d 782, 785 (11th Cir. 2004), codified in the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 ("AEDPA"). Among the more notable of those restrictions include a one-year statute of limitations, *see* 28 U.S.C. § 2244(d)(1); a deferential standard of review of state court adjudications of law and fact, *see* 28 U.S.C. § 2254(d); a certificate of appealability requirement, *see* 28 U.S.C. § 2253(c); and strict limits on filing a second or successive § 2254 application, *see* 28 U.S.C. § 2244(b).

Harris argues in Section A of his Objections that § 2254 and its "additional restrictions" do not apply to his habeas petition because, he asserts, "he is not in custody pursuant to a *valid* judgment of a state court." (Obj. at 17 (emphasis original, other emphasis omitted)). That is so, he says, because the state trial court allegedly did not possess jurisdiction; therefore, its judgment against him is "absolutely void." (*Id.*) However, Harris conspicuously fails to cite any case holding that § 2254 does not govern a habeas petition filed by a state prisoner who claims that a state court criminal judgment facially authorizing his detention was entered in the absence of jurisdiction under state law or was otherwise not "valid." Indeed, every prisoner who attacks his state court conviction by federal habeas is

necessarily claiming that his judgment is not "valid." Rather, the court agrees with the magistrate judge's conclusion, reached in his initial R&R, that § 2254 applies to habeas petitions filed by prisoners like Harris, who are deemed to be "in custody pursuant to" a judgment of a duly constituted state court that authorizes their detention, even assuming that such judgment ultimately might be shown to be invalid, including for a want of jurisdiction under state law. (*See* Doc. 10 at 10 (citing *Diggs v. Gordey*, 2015 WL 4941240, at *1 (N.D. Ala. Aug. 19, 2015); *Hogan v. Smith*, 2009 WL 2338007 (S.D. Ga. July 27, 2009); *Franklin v. Stewart*, 13 F. App'x 605, 606 (9th Cir. 2001))).

But perhaps more to the point, the pending R&R by which the magistrate judge now recommends that Harris's habeas petition be denied did so after expressly bypassing consideration of all procedural defenses. Rather, it recommends that Harris's petition be denied because his claims lack substantive merit. Further, the magistrate judge's analysis did not mention any state court adjudication of law or fact, so it is clear that his review was *de novo*, not one affording deference under 28 U.S.C. § 2254(d). And, as further explained in the sections below, the court agrees with the magistrate judge's conclusion that Harris's claims are without merit. Thus, whether Harris's habeas petition is characterized as being subject to § 2254 is immaterial to whether he might be

entitled to habeas relief.

Harris also claims in Section F of his Objections that the magistrate judge affirmatively stated that his petition would be treated as filed under § 2241 but the R&R "was based on Harris's petition being treated as filed under 28 U.S.C. § 2254." (Obj. at 41). This argument is based on a single sentence in the court's order requiring the State to show cause why Harris is not entitled to habeas relief. (*See* Doc. 6). Specifically, in the introductory paragraph of that show cause order, the magistrate judge, in briefly reciting the case's history to that point, wrote as follows: "The court has advised Harris that it intends to treat his habeas application has having been made pursuant to 28 U.S.C. *§ 2241*. (Doc. 4)." (Doc. 6 at 1 (emphasis added)). Harris suggests that sentence indicated that the court was going to treat his petition as subject to only § 2241 and not § 2254 and that the magistrate judge then went back on that, thereby misleading him.

As a threshold matter, it is clear that the subject sentence in the show cause order was attempting to summarize the substance of a prior order of the court, the cited "Doc. 4." "Doc. 4" is the court's *Castro* order, which unambiguously and in no uncertain terms advised Harris *that the court intended to treat his habeas petition as being subject to 28 U.S.C. § 2254 because Harris is a state prisoner*. (*See* Doc. 4). It is unmistakable, therefore, that the show cause order's reference

to "§ 2241" is a typographical error and was meant to read "§ 2254." Indeed, the succeeding paragraph of the show-cause order recited the magistrate judge's belief that Harris's petition might "very well be barred by the applicable statute of limitations, *see* 28 U.S.C. § 2244(d)(1)" or by a "fail[ure] to exhaust available state remedies, *see* 28 U.S.C. § 2254(b)" and invited the State to file materials in support of such defenses. (Doc. 6 at 1). Those cited statutory provisions, of course, apply specifically to habeas petitions subject to § 2254. As such, Harris's claim that he was misled by the typo in the show-cause order is disingenuous at best.

But even assuming that Harris could have been confused, he does not claim to have suffered any prejudice. Nor could he. As explained above, the magistrate judge's now-pending R&R (Doc. 20) expressly bypassed consideration of all procedural defenses applicable to § 2254 petitions and recommended that Harris's habeas petition be denied *solely because his claims lack substantive merit.* And because the Court agrees with that assessment by the magistrate judge, it is immaterial whether Harris's petition is deemed subject to § 2254. Harris's objections that the magistrate judge unfairly treated his habeas petition as being governed by § 2254 are due to be overruled.

**B.**

Sections B, C, D, and G of Harris's objections all revolve around the premise that the magistrate judge's R&R improperly fails to credit as true certain purportedly "unrefuted" allegations in Harris's habeas petition. Section G makes this argument most explicitly, asserting that "the allegations of fact in his verified § 2241 petition that he is unlawfully imprisoned in violation of the U.S. Constitution because said imprisonment is based on void judgment orders must be taken as true" and then lamenting that the R&R fails to do so. (Obj. at 40). Harris similarly complains in Section B that while he has pled that the state court was "without jurisdiction," thereby rendering its judgment and sentencing orders "void" and "complete nullities" the magistrate judge failed to credit those allegations and instead treated his claims as asserting "that the indictment in his case *is merely defective*." (*See* Obj. at 19). In turn, in Section C he argues that such a recharacterization demonstrates that the magistrate judge has "unconstitutionally scrutinize[d]" Harris's *pro se* habeas petition with "technical nicety." (Obj. at 22). And, finally, in Section D, Harris argues that the magistrate judge has overlooked the fact that the State "has conceded to the merits of [his] allegations" (Obj. at 25) and that, as a result, his claim that the judgment of conviction and sentencing orders in his case "are void for lack of jurisdiction and

14

are thereby complete nullities ... must be taken as true." (Obj. at 24 (emphasis omitted)).

All of these objections suffer from the same basic flaw: None of Harris's pled assertions are factual allegations. Rather, they are legal conclusions masquerading as facts. While such conclusions may provide a framework for his claims, absent specific factual allegations to flesh them out, they are not entitled to a presumption of truth. *See Ex parte Cuddy*, 131 U.S. 280, 286 (1889) ("The general averment in the petition, that he was detained in violation of the constitution and laws of the United States, and that the district court had no jurisdiction or authority to try and sentence him, in the manner and form above stated, is an averment of a conclusion of law, and not of facts, that would, if found to exist, displace the presumption the law makes in support of the judgment."); *Osborne v. Johnson*, 120 F.2d 947, 948 (9th Cir. 1941) ("The petition contains statements to the effect that the New Mexico court never had jurisdiction, that it lost its jurisdiction, and that its judgment was void for lack of jurisdiction; but these are mere conclusions of law, which we are not required to accept, and which[—] since the pleaded facts do not warrant them[—] we do not accept." (footnote omitted); *Brown v. United States*, 2006 WL 3349580, at *3 (S.D. Ga. Nov. 17, 2006) (rejecting "conclusory" arguments contesting jurisdiction and

15

Congress' authority to enact the laws under which the petitioner was convicted because "mere conclusory claims and allegations unsupported by specifics are insufficient to entitle a petitioner to habeas relief" (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss [under FED. R. CIV. P. 12(b)(6)] we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)).  Thus, what matters is not whether Harris has couched his claims as impugning the state trial court's "jurisdiction" or whether he has labeled its judgment and orders as "void" or "nullities."  Rather, the Court's focus must be on whether the specific factual allegations Harris has pled, including as they relate to alleged defects in his state-court indictment, taken as true, show that he is entitled to habeas relief.  *See* Rules 2(c)(1) & (2), Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 HABEAS RULES") (recognizing that "The petition must ... specify all the grounds for relief available to the petitioner [and] state the facts supporting each ground"); *id.*, Rule 1(b) (generally authorizing courts to apply the § 2254 HABEAS RULES to habeas cases not governed by § 2254);  *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Habeas petitions must meet heightened pleading requirements."); *Borden*

*v. Allen*, 646 F.3d 785, 810 (11th Cir.2011) (recognizing that Rule 2(c) mandates "fact pleading" as opposed to "notice pleading," as authorized under FED. R. CIV. P. 8(a)).

Harris's objection in Section C that the magistrate judge "erroneously scrutinizes Harris's *pro se* verified § 2241 petition with technical nicety," (Obj. at 22-23), is also without merit. It is true, of course, that *pro se* filings by habeas petitioners are to be construed liberally. *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013). As the above discussion makes clear, however, Harris's prior *pro se* status that does not mean that he is entitled to have the court accept legal conclusions pled in his petition. And, to the extent that Harris might be suggesting that the magistrate judge otherwise analyzed his petition in an overly rigid or technical fashion, he fails to explain how that might be so.

In Section D of his objections, Harris insists that he is due to be "released immediately" because, he says, the State "has conceded to the merits of Harris's allegations." (Obj. at 25). In support, Harris argues that, in its Answer, the State's "only defense" was that Harris's claims are time-barred under § 2244(d)(1). (Obj. at 23). As a result, Harris says, "it is clear that Respondent failed to refute the merits of Harris's claim that the judgment of conviction and sentencing orders [in his case] are void for lack of jurisdiction and are thereby complete nullities." (*Id.*

at 23-24 (emphaseis omitted)). This objection is misguided, both factually and legally.

First, Harris is wrong on the facts when he says the State's Answer concedes the merits of his claims. The State's Answer does assert two affirmative defenses, based on the statute of limitations (Doc. 7, ¶¶ 5, 8-9) and lack of exhaustion and procedural default. (*Id.*, ¶¶ 6, 10, 11). However, it also expressly denies that "Harris is in custody in violation of the laws or [C]onstitution of the United States" and makes the complementary assertion that his "convictions and sentences were validly and constitutionally obtained." (*Id.*, ¶ 7). Harris is also wrong on the law in saying this Court must now deem his claims to be meritorious. The burden is on Harris to plead and prove facts that would entitle him to federal habeas relief. *See Jones v. Secretary, Fla. DOC*, 834 F.3d 1299, 1318-19 (11th Cir. 2016); *Borden*, 646 F.3d at 810-11. And, as already explained, Harris's allegations to the effect that the judgment and orders in his criminal case were "void" and "complete nullities" because the state court "lacked jurisdiction" do not carry that burden because they are mere legal conclusions and accordingly are not entitled to a presumption of truth. Moreover, that is so regardless of whether the State contested them in its Answer, which, again, contrary to Harris's assertion, the State did.

## C.

In Section E of his objections, Harris contends that, because the Answer argues the specifics of only the State's procedural defenses, without raising substantive arguments attacking the merits of his claims, the magistrate judge's *sua sponte* rejection of the petition using the latter approach "unlawfully and unfairly put this Honorable Court in an adversarial position against Harris."  (Obj. at 25-26).

This objection is misguided for two reasons.  First, as stated above, the State's Answer denied that "Harris is in custody in violation of the laws or [C]onstitution of the United States" and asserted that his "convictions and sentences were validly and constitutionally obtained."  (Doc. 7, ¶ 7).  Thus, the magistrate judge's recommendation that Harris's petition be denied on the merits is <u>consistent</u> with the State's position articulated in its Answer.  Second, Harris's objection reflects a misunderstanding of federal habeas procedure.  "A discrete set of Rules governs federal habeas proceedings launched by state prisoners."  *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (citing § 2254 HABEAS RULES) (footnote omitted)).  Under Rule 4 of the § 2254 HABEAS RULES, the district court "must promptly examine" a § 2254 petition upon filing, and "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief ...,

the judge must dismiss the petition ....." Thus, a district court has the right <u>and</u> <u>duty</u> to screen a habeas corpus petition *sua sponte* to evaluate whether it fails to state a viable claim or is barred by a procedural defense apparent on the face of the petition, which in either case would generally make it unnecessary to order the State to even respond.[2] *See Day v. McDonough*, 547 U.S. 198, 207-08 (2006); *Borden*, 646 F.3d at 810; *Wright v. Williams*, 257 F. App'x 240, 241 (11th Cir. 2007); *see also Washington v. Strickland*, 693 F.2d 1243, 1278 n. 30 (5th Cir. Unit B 1982) (Tjoflat, J., specially concurring), *reversed on other grounds sub nom. Strickland v. Washington*, 466 U.S. 668 (1984). Further, the Supreme Court has held that, even if the State's answer conceded, based on a computational error, that a § 2254 petition was timely filed, the district court was authorized to interpose the statute of limitations *sua sponte*, although it is an affirmative defense subject to waiver, because the State's response indicated the State had not knowingly waived it. *Day*, 547 U.S. at 209. *A fortiori*, insofar as the burden to plead and then prove facts entitling him to habeas relief <u>always</u> lies with the petitioner, it is clearly appropriate for a district court, either before or after the State has answered, to

---

[2]Because Harris has argued that his petition is not governed by § 2254, the court would observe that the *sua sponte* screening procedure of Rule 4 is also regularly employed where a habeas petition is not subject to § 2254. *Cf.* Rule 1(b), § 2254 HABEAS RULES ("The district court may apply any or all of these rules to a habeas corpus petition not covered by [§ 2254].").

deny relief on the ground that the petition fails to allege such facts. This objection is without merit.

## D.

The objections in support of which Harris spills the most ink are those contained in his section "F," wherein he broadly argues that the magistrate judge's "findings are contrary to applicable law." (Obj. at 26-40). In support, he first maintains that the magistrate judge erred in recommending the denial of his first five claims for habeas relief because, Harris posits, the state trial court never obtained jurisdiction over him under Alabama state law (1) because his indictment allegedly fails to allege "willfulness" as required to charge a criminal offense under the Alabama Securities Act and (2) because his indictment allegedly was not endorsed "a true bill" by the foreperson of the grand jury. Harris insists that because the State court lacked jurisdiction under State law, his conviction violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as the Cruel and Unusual Punishments Clause of the Eighth Amendment.

At the outset, the Court recognizes, as did the magistrate judge, the fundamental principle that federal habeas relief does not lie for an error of State law unless it rises to the level of a violation of the Constitution, laws, or treaties of the United States. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle v.*

*McGuire*, 502 U.S. 62, 68 (1991).  Harris takes it for granted that he would

establish a violation of the Federal Constitution if he could show that the State

court lacked subject-matter jurisdiction over his case under Alabama law.  That is

hardly assured, however.  Not every error of State procedural law is a violation of

federal due process or of the Constitution otherwise.  *See Swarthout*, 562 U.S. at

221-22.  Further, because the Fifth Amendment's guarantee of indictment by

grand jury does not apply to the States, *Alexander v. Louisiana*, 405 U.S. 625, 633

(1972), the sufficiency of a State indictment is primarily a matter of State law.

*Tapia v. Tansy*, 926 F.2d 1554, 1560 (10th Cir. 1991); *Franklin v. White*, 803 F.2d

416, 418 (8th Cir. 1986).

Despite that, two published opinions of the Eleventh Circuit and three of the

old Fifth Circuit[3] have suggested that federal habeas relief may be available if an

indictment is so defective as to deprive the convicting court of jurisdiction.  *Heath*

*v. Jones*, 863 F.2d at 821; *DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th

Cir. 1982); *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980); *Meyer v.*

*Estelle*, 621 F.2d 769, 771 (5th Cir. 1980); *Bueno v. Beto*, 458 F.2d 457, 459 (5th

Cir. 1972); *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969).  In none of those

---

[3]Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

cases, however, was habeas relief actually granted, so any suggestion that relief might have been available if jurisdiction was shown to have been lacking under State law was *dicta*, strictly speaking. *See generally United States v. Kaley*, 579 F.3d 1246, 1253 (11th Cir. 2009) ("As our cases have frequently observed, *dicta* is defined as those portions of an opinion that are not necessary to deciding the case then before us." (internal quotation marks and citation omitted)). It is also arguable that such a formulation rests upon outdated caselaw holding that federal habeas relief is available only where an error deprives the State court of "jurisdiction," a term that, over time, came to be interpreted in federal habeas cases much more expansively than it is today. *See Lott v. Coyle*, 261 F.3d 594, 622 (6th Cir. 2001) (Boggs, J., concurring in part and concurring in the judgment); *see also United States v. Cotton*, 535 U.S. 625, 629-30 (2002). Indeed, district courts in this Circuit and the courts of appeals in others appear generally to agree that the issue whether an otherwise-duly-constituted State court technically possesses jurisdiction under State law over a particular prosecution does not itself implicate such fundamental unfairness in the proceedings as to violate the Federal Constitution. *See, e.g., Alverson v. Boyd*, 2013 WL 4851682, at *10 (N.D. Ala. Sept. 10, 2013); *Marts v. Tucker*, 2012 WL 1802149, at *10 (N.D. Fla. Apr. 16, 2012), *report and recommendation adopted*, 2012 WL 1795215 (N.D. Fla. May

17, 2012); *Townley v. Crews,* 2014 WL 1246132, at *3 (N.D. Fla. Mar. 25, 2014);

*Estrada v. Secretary, DOC*, 2012 WL 1231990, at *1 (M.D. Fla. Apr. 12, 2012);

*Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Hernandez v. Ylst*, 930 F.2d 714,

719 (9th Cir. 1991); *U.S. ex rel. Roche v. Scully*, 739 F.2d 739, 741-42 (2d Cir.

1984); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976); *see also Gasquet v.

Lapeyre*, 242 U.S. 367, 369 (1917) ("[T]here is nothing in the clauses of the 14th

Amendment guarantying [sic] due process and equal protection which converts an

issue respecting the jurisdiction of a state court under the Constitution and statutes

of the state into anything other than a question of state law, the decision of which

by the state court of last resort is binding upon this court."). But, as explained

below, even assuming that a court's lack of jurisdiction under State law also could

give rise to a violation of the Federal Constitution, the Court agrees with the

magistrate judge that neither of Harris's theories based on alleged defects in his

indictment demonstrate such an absence of jurisdiction.

Harris first argues that the State trial court did not have jurisdiction because,

although his indictment does allege that he acted "contrary to law" in violating

cited provisions of the ASA, namely Ala. Code §§ 8-6-3(a) and (b), 8-6-4, 8-6-

17(a)(1), (a)(3), (b)(1), and (b)(2), the document does not expressly charge that he

committed those violations "willfully." (*See* Doc. 3 at 15-18). Harris highlights

that, although those substantive ASA statutes do not set out a particular *mens rea*

requirement, the ASA's criminal enforcement provision specifies that any person

who "willfully violates" any provision shall, upon conviction, be guilty of a Class

C felony, Ala. Code § 8-6-18(a), and that any person who "willfully violates" any

rule or order shall, upon conviction, be guilty of a Class A misdemeanor. *Id.*, § 8-

6-18(b). Thus, the Alabama courts have recognized that such a statutory reference

to a "willful" violation means that "'scienter' or 'guilty knowledge'" is an

essential element of criminal offenses under the ASA. *Favor v. State*, 389 So. 2d

556, 562 (Ala. Crim. App. 1980); *see also Van Antwerp v. State*, 358 So. 2d 782,

786 (Ala. Crim. App. 1978), *overruled on other grounds by Ex parte Marek*, 556

So. 2d 375 (Ala. 1989); *Buffo v. State*, 415 So. 2d 1158, 1165-66 (Ala. Crim. App.

1982); *Bayhi v. State*, 629 So. 2d 782, 789 (Ala. Crim. App. 1993). Harris

therefore emphasizes that, without proof of such willfulness, a violation of the

ASA is not a criminal offense but is, rather, subject only to civil administrative

enforcement by the Alabama Securities Commission under Ala. Code § 8-6-16.

And, he says, because his indictment does not "track[ ] the essential elements of

the criminal statute under § 8-6-18, subject-matter jurisdiction never attached" in

the State circuit court. (Obj. at 29).

But, as the magistrate judge recognized, the problem for Harris is that the

Alabama Supreme Court, the final expositor of State law, has held that the failure of an indictment to allege that an enumerated statutory offense was committed with the culpable mental state required to establish criminal liability does <u>not</u> deprive a State court of jurisdiction. *See A.L.L. v. State*, 42 So. 3d 146, 150 (Ala. 2009) (absence of a *mens rea* averment in indictment for vehicular homicide did not render the indictment fatally defective or void); *Madden v. State*, 989 So. 2d 607, 607-08 (Ala. 2007) (omission in indictment of essential element of receiving stolen property, namely that defendant "intentionally" received stolen property, was not jurisdictional defect); *Ex parte Seymour*, 946 So. 2d 536, 538-39 (Ala. 2006) (defendant's conviction for shooting into an occupied dwelling was not void for lack of subject-matter jurisdiction based on the failure of the indictment to allege the culpable mental state element required to establish the offense); *see also Hunt v. State*, 642 So. 2d 999, 1026 (Ala. Crim. App. 1993) (rejecting defendant's argument that the "indictment was insufficient to charge a criminal offense in that it fails to allege that the defendant knowingly or willfully violated" Alabama state ethics statutes, as specified by the separate enforcement provision of that act; "[T]he failure to allege criminal intent in an indictment does not necessarily render an indictment void and in some cases does not even render it objectionable even in those cases where criminal knowledge is necessary for the proof of the crime

charged."), *aff'd*, 642 So. 2d 1060 (Ala. 1994)).  None of the numerous cases that

Harris cites in this section of his objections, which all predate *Ex parte Seymore*

(*see* Obj. at 26-32), can establish a <u>jurisdictional defect</u>.

Harris's second theory is that the State trial court's judgment is void for lack

of jurisdiction under Alabama law because the foreperson allegedly did not

endorse the indictment as "a true bill."  The magistrate judge rejected that claim,

concluding that such an omission is also not a jurisdictional defect under Alabama

law.  In support, the magistrate judge cited *In re Goulden*, 299 So. 2d 325, 326

(Ala. 1974), characterizing it in a parenthetical as holding that the "failure of [the]

grand jury foreman to endorse [the] indictment as [a] true bill did not deprive [the]

circuit court of jurisdiction so as to render [its] judgment void."  (R&R at 8-9).

Harris now claims that the magistrate judge "editorialized" the holding in

*Goulden*, which Harris insists establishes that such an omission is, in fact,

jurisdictional.  (Obj. at 31-32).  However, a review of the *Goulden* case reveals the

Alabama Supreme Court to have said: "<u>The failure of the foreman of the grand</u>

<u>jury to endorse the indictment as a true bill did not deprive the circuit court of</u>

<u>jurisdiction</u> but it did render the indictment invalid to the extent that it would not

support the judgment of conviction."  299 So. 2d at 326 (emphasis added).  In

other words, the case recognized that such an omission is a <u>reversible</u> error but not

a jurisdictional one. *See also Smith v. State*, 609 So. 2d 449, 450 (Ala. Cr. App. 1992) ("The petition was correctly determined not to state grounds for a writ of habeas corpus because it alleged no jurisdictional basis for setting aside the appellant's conviction. ... "[T]he failure of the grand jury foreman to endorse the indictment 'a true bill,' *see Noah v. State*, 494 So. 2d 870, 871 (Ala. Cr. App. 1986), [does not] affect[ ] the fundamental power of the court to proceed with the prosecution."). Federal courts are generally bound to follow the Alabama Supreme Court's pronouncements on Alabama state law. *See Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1185-86 (11th Cir. 2017). This court is also bound more directly to follow holdings of published decisions of the Eleventh Circuit. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004). That includes Eleventh Circuit decisions insofar as they interpret Alabama appellate decisions expounding State law. *See Hurt v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 1293, 1325 n. 24 (N.D. Ala. 2016); *Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1249-50 (M.D. Fla. 2009). And, on that score, the Eleventh Circuit has quoted the language italicized above from *Goulden* for the proposition that "the foreperson's failure to sign the indictment is not jurisdictional under Alabama law." *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000); *see also Justo v. Culliver*, 317 F. App'x 878,

28

880 (11th Cir. 2008). In the absence of an intervening Alabama appellate decision making clear that the Eleventh Circuit interpretation of *Goulden* in *Franklin* is wrong, this Court must adhere to that interpretation. *See Estate of Miller, supra*. In any event, *Goulden* itself clearly belies Harris's claim that it stands for the proposition that the grand jury foreman's endorsement of the indictment is a jurisdictional requirement under State law. This analysis is further reinforced by the Alabama Supreme Court's subsequent decision in *Ex parte Seymour* holding more broadly that, under State law, the validity of an indictment "is irrelevant to whether the circuit court had jurisdiction over the subject matter of th[e] case." 946 So. 2d at 539. This objection is without merit.

Finally, Harris argues in this section that the magistrate judge also erred in rejecting his sixth and seventh grounds for habeas relief, which are based on allegations that the Alabama State courts violated his constitutional rights in the state habeas proceedings by which he sought post-conviction relief. (Obj. at 37-38). In support of that disposition, the magistrate judge cited a string of Eleventh Circuit cases holding that federal habeas relief does not lie for constitutional violations occurring in State post-conviction proceedings because such errors do not impugn the underlying criminal proceedings yielding the judgment by which the prisoner is held. (*See* R&R at 10 (*citing Alston v. Department of Cor., Fla.*,

610 F.3d 1318, 1326 (11th Cir. 2010); *Carroll v. Secretary DOC, Fla. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir. 2009); *Anderson v. Secretary for DOC*, 462 F.3d 1319, 1330 (11th Cir. 2006); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)). Harris does not dispute that those Eleventh Circuit cases stand for the proposition cited by the magistrate judge. Nonetheless, Harris argues that the magistrate judge's reliance on those cases is "misplaced" because, Harris submits, "they are not in balance with" the Supreme Court's decision in *Fay v. Noia*, 372 U.S. 391 (1963), *abrogated in part by Wainwright v. Sykes*, 433 U.S. 72 (1977). (Obj. at 38). Specifically, Harris's retained counsel purports to quote *Fay* in arguing that *Fay* establishes the principle that, "if the state court declines to entertain a federal defense because of a procedural default, then the prisoner's custody is actually due to the default rather than to the underlying constitutional infringement, so that he is in custody in violation of federal laws." (Obj. at 38 (purporting to quote *Fay*, 372 U.S. at 428)). This argument, however, is wrong, because Harris's counsel has both misquoted and misread *Fay*.

For starters, *Fay* did not involve a claim for federal habeas relief based on an alleged federal constitutional violation occurring during a State post-conviction proceeding. Rather, the question in *Fay* was whether, by failing to pursue a direct appeal, a state prisoner had failed to exhaust and thereby procedurally defaulted

30

his federal due process claim asserting that his conviction for felony murder rested on a coerced confession admitted at trial. *See* 372 U.S. at 394-99. In the course of answering that question, the Supreme Court at one point recognized the principle that "federal court jurisdiction [to issue writs of habeas corpus] is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings." *Id.* at 426-27. That Court then responded to "a number of arguments ... advanced against [that] conclusion." *Id.* at 427. The first of those was stated as a claim that "a state prisoner who forfeits his opportunity to vindicate federal defenses in the state court has been given all the process that is constitutionally due him, and hence is not restrained contrary to the Constitution." *Id.* The Court rejected that argument, reasoning that "due process denied in the proceedings leading to conviction is not restored just because the state court declines to adjudicate the claimed denial on the merits." *Id.* At that point, the Court turned to a related contention, using the language, highlighted below, that Harris alludes to in his objections, as follows:

> A variant of this argument is that *if the state court declines to entertain a federal defense because of a procedural default, then the prisoner's custody is actually due to the default rather than to the underlying constitutional infringement, so that he is not in custody in violation of federal law*. But this ignores the important difference between rights and particular remedies. *Cf. Douglas v. Jeannette*, 319 U.S. 157 [(1943)]; *Stefanelli v. Minard*, 342 U.S. 117 [(1951)]; *Wolf*

31

*v. Colorado*, 338 U.S. 25 ([1949)]. A defendant by committing a procedural default may be debarred from challenging his conviction in the state courts even on federal constitutional grounds. But a forfeiture of remedies does not legitimize the unconstitutional conduct by which his conviction was procured. Would Noia's failure to appeal have precluded him from bringing an action under the Civil Rights Acts against his inquisitors? The [Judiciary] Act of February 5, 1867, like the Civil Rights Acts, was intended to furnish an independent, collateral remedy for certain privations of liberty. The conceptual difficulty of regarding a default as extinguishing the substantive right is increased where, as in Noia's case, the default forecloses extraordinary remedies. In what sense is Noia's custody not in violation of federal law simply because New York will not allow him to challenge it on coram nobis or on delayed appeal? But conceptual problems aside, it should be obvious that to turn the instant case on the meaning of 'custody in violation of the Constitution' is to reason in circles. The very question we face is how completely federal remedies fall with the state remedies; when we have answered this, we shall know in what sense custody may be rendered lawful by a supervening procedural default.

*Fay*, 372 U.S. at 427-28 (emphasis added, footnote omitted).

Harris's first error is that, in his attempt to quote part of the introductory sentence of the above paragraph of the *Fay* opinion, he has omitted the word "not" from the phrase "so that he is not in custody in violation of federal law." *Compare* 372 U.S. at 427 with (Obj. at 38)[4]. More concerning is that Harris presents his quotation as if the *Fay* Court had, in fact, *held* that "if the state court declines to

---

[4]Although the error is certainly immaterial, Harris also quotes the last word of the sentence as "laws" when the actual quote uses the word "law." Likewise, while Harris cites the quote as appearing on page 428 of the *Fay* opinion, it actually is on page 427.

entertain a federal defense because of a procedural default, then the prisoner's custody is actually due to the default rather than to the underlying constitutional infringement." When the sentence is read in full and in context with the ensuing discussion, however, it is clear that the language Harris quotes articulates an argument that the Supreme Court rejected. Finally, Harris misconstrues the import of the language he misquotes insofar as the *Fay* Court was considering the potential effect a procedural default of a constitutional claim arising at trial might have upon the conceptual basis of a habeas petitioner's custody, not anything about a constitutional violation occurring on State collateral review. Harris's objection based on *Fay* is entirely misguided.

## E.

Taking a fallback position, Harris argues that, even if one accepts, as this Court does, that the State court possessed "jurisdiction" under Alabama law, Harris says that the State court's judgment was nonetheless "void" because that court "acted in a manner inconsistent with due process." (Obj. at 42-43). This claim is based on a commonly articulated formulation of a rule to the effect that a judgment is "void" if the court rendering it lacked jurisdiction over the subject matter or the parties or "acted in a manner inconsistent with due process." *See, e.g.*, *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001); *Gill v. Wells*, 610 F.

33

App'x 809, 811 (11th Cir. 2015); *Campbell v. Taylor*, 159 So. 3d 4, 8 (Ala. 2014); *Smith v. Clark*, 468 So. 2d 138, 141 (Ala. 1985).  However, that formulation originated in the context of courts considering motions under FED. R. CIV. P. 60(b)(4) to set aside a <u>civil</u> judgment or order on the ground that it is "void."  *See* C. Wright, A. Miller, et al., *Fed. Prac. & Proc.* § 2862 (3d ed.); *Seventh Wonder v. Southbound Records, Inc.*, 364 So. 2d 1173, 1174 (Ala. 1978) (*citing* Wright & Miller § 2862 in expounding the standard for considering a motion under ALA. R. CIV. P. 60(b)(4)).  It is clear that saying that a judgment is "void" if the court entering it "acted in a manner inconsistent with due process" cannot conceivably mean that literally any due process violation that occurs in relation to a judicial proceeding automatically renders void an ensuing judgment or order.  Such an interpretation would imply that any due process claim might be raised at any time to "void" a judgment, but that is clearly not so; it is beyond doubt that due process claims are generally subject to waiver and default like other types of claims if not timely pressed.  *See In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992) (*cited in Burke*, 252 F.3d at 1263); *see also, e.g.*, *Ferguson v. Secretary for DOC*, 580 F.3d 1183, 1210-14 (11th Cir. 2009) (holding that § 2254 petitioner's federal due process claim was procedurally defaulted); *Hammond v. Hall*, 586 F.3d 1289, 1323 (11th Cir. 2009) (same).  Moreover, no case either cited by Harris or

unearthed by the undersigned's research holds that a <u>criminal</u> judgment entered by a State court possessed of jurisdiction may be set aside in habeas as "void" based on a due process violation, as it relates to an indictment defect or otherwise. *Cf. United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir. 2003) (holding that Fed. R. Civ. P. 60(b)(4) cannot be used to attack a criminal judgment). This objection is due to be overruled.

## F.

Harris's final argument, contained in Section H of his objections, is that his "claims constitute a violation of clearly established federal law." (Obj. at 46). Ultimately, however, the relatively ancient Supreme Court cases he relies upon as pronouncing "clearly established federal law" are not directly on point and do no more than state broad principles to the effect that courts may act only within their jurisdiction. (*See id.* at 47-48 (quoting *In re Bonner*, 151[5] U.S. 242, 257 (1894); *Pennoyer v. Neff*, 95 U.S. 714, 733 (1894); *Post v. United States*, 161 U.S. 583, 585 (1896)). Harris here also further expounds on what he believes are "jurisdictional" requirements of indictments under Alabama law that he says were not satisfied, thereby giving rise to a violation of his federal due process rights. (*Id.* at 46-48). But, as explained previously, the alleged defects in Harris's

---

[5]Harris's objection erroneously cites *In re Bonner* as being published at "252 U.S. 242."

indictment of which he complains do not, in fact, deprive an Alabama circuit court of criminal jurisdiction.  As such, this objection is due to be overruled, for it amounts to a rehashing of arguments that the Court has already rejected.

### III.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the magistrate judge's Report and Recommendation and the Petitioner's Objections thereto, the court is of the opinion that the magistrate judge's findings are due to be and are hereby **ADOPTED** and his recommendation is **ACCEPTED**.  Petitioner's Objections are **OVERRULED**.  As a result, the petition for writ of habeas corpus is due to be denied and this action is due to **DISMISSED WITH PREJUDICE**.  Furthermore, because the petition does not present issues that are debatable among jurists of reason, a certificate of appealability is also due to be **DENIED**.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a), RULES GOVERNING § 2254 PROCEEDINGS.  A separate Final Order will be entered.

**DONE** and **ORDERED** this the 1st day of November, 2017.

<br>

**VIRGINIA EMERSON HOPKINS**
United States District Judge